KEIFFER BROS. CO. *v.* BANK OF COMMERCE.

[63 South. 189.]

1. EXECUTORS AND ADMINISTRATORS. *Insolvent estate. Filing claims.*
   *Lost claims. Extention of time for filing. Verification. Code*
   1906, *section* 211. *Allowance of claims. Review. Presumption.*

   Where the estate of a decedent was declared insolvent and notice
   given in the manner provided by section 2117, Code 1906, for
   all creditors to file their claims by a given date, at which time
   all claims would be taken up for examination and adjudication,
   and on said date a creditor did not file his original probated
   claim which had been properly probated, but filed copies of
   the same, and attached thereto the certificate of the clerk of
   the chancery court that the claim had been filed and probated,
   and allowed strictly in accordance with the statute, and the
   attorney for the claim filed with the claims his affidavit that
   the original probated claims had been lost or misplaced and the

court granted an extention of thirty days in which to file proofs and evidence of the justness and correctness of the claims and afterwards further extended the time and before the expiration of such last extention, such original probated claims were found and filed it was error for the court to disallow such claims on the ground that no good reason had been offered why such claims had not been filed by the date to which the first continuance was taken.

2. SAME.

In such case the court had the right to continue the hearing, or to extend the time for the presentation of claims and the creditor should not be penalized, to the extent of forfeiting his claim because it had been lost or mislaid.

3. EXECUTORS AND ADMINISTRATORS. *Claims against estate. Verification.*

Where the affidavit attached to a note when offered for probation clearly states that the note was due and owing from the deceased, this entitled the payer to probate the note against the estate, although the affidavit does not declare whether he was maker or endorser as it is to be presumed on appeal that the chancellor ascertained the relation of the decedent to the note probated.

APPEAL from the chancery court of Adams county.
HON. J. S. HICKS, Chancellor.

Appeal by Keiffer Brothers & Company and others against the Bank of Commerce, from a decree disallowing the claim of appellants and allowing the claim of appellee against the estate of C. Holloman, deceased.

The facts are fully stated in the opinion of the court.

*Brandon & Bowman* and *L. T. Kennedy,* for appellants.

As to the first ground of appeal. As shown in the statement of facts, when notice was given for creditors to come forward and probate their claims, appellants in compliance therewith probated their claims within the year allowed by law. It developed later that the estate was insolvent and thereupon proceedings were had in accord-

ance with the law governing insolvent estates, and notice was given to creditors in accordance with section 2117 of the Code of 1906, to file their claims with the clerk of the court on or before May 9, 1912, the last day upon which claims could be filed, and the day upon which the chancellor was present to take up the accounts filed statements of their respective claims, showing the same amount due as appeared by the probate register. In further support of their claims, they filed a certificate of the chancery clerk stating that the claims had been properly probated, and also filed with said claims an affidavit stating that the original probated claims had been lost or misplaced, and showing that the accounts were unpaid, and were still in the form of probated accounts. The chancellor (at the July term of the court) held that this was not sufficient filing of the accounts, but that the law contemplated the filing of the identical paper that was originally probated.

Let us see if the claims as filed by appellants on May 9, 1912, were sufficient as required by law, or were the original probated claims necessary. The statute in regard to the filing of the claims in insolvency proceedings, section 2117, Code of 1906, reads as follows:

"When the time for probating and registering claims has elapsed, the court shall cause notice to be inserted in some newspaper published in the state for three successive weeks, that at a time fixed the claims will be taken up for examination and adjudication; that all claims must be filed with the clerk by the day named in the notice, and that all creditors may attend. At the time appointed, the court shall examine into the validity of each claim filed with the clerk, and the executor or administrator or any creditor may object to any claim, and the court shall hear evidence in support of the objection, and shall allow any claim that should be allowed, and shall reject in whole or in part any which is in whole or in part not well founded. A claim, unless filed with the clerk by the day

named in the notice, shall not be allowed, but those not filed with the clerk shall not be barred as to any surplus that remains after paying in full those filed.''

No mention is made in the above section as to the character of claims to be filed, and nowhere does it say that the document filed must be the identical paper that was originally probated, nor does the statute, as to some statutes, require that the claim be supported by affidavit. The purpose of this statute is entirely different from the law in regard to the probating of accounts. The law requires an account to be probated in order that its correctness may be established, all questions in regard to it adjudicated, a permanent record made of it for preservation, and a determination as to what claims are outstanding against the estate. The purpose of filing claims with the clerk in insolvency proceedings is for an entirely different purpose. It is our contention that this is required in order that it may be determined just what claims, among those which have been probated, are still outstanding against the estate, and the status of each. This matter is made very clear in the case of *Hansell* v. *Forbes,* 33 Miss. 42. This case was overruled by the supreme court, but the rule thereof was re-established by the enactment of section 2117, of the Code of 1906, *Greener* v. *Neal,* 61 Miss. 204; *Neally* v. *Segar,* 57 Me. 563; 18 Cyc. 857; 27 Cohn. 344; 10 Ala. 520; 12 Ala. 191.

But, passing from this. The hearing on May ninth, was continued until the regular term of the court, and the matter was again called up on August tenth. What was this matter called up for on August tenth? Certainly it was not for appellants to show some good reason why they did not file their original probated accounts with the clerk on May ninth. This would have reduced the action of the court to an absurdity, and in direct conflict with the contention that it was necessary in the first instance and on May ninth for appellants to have filed the original probated accounts. If the filing on May ninth

of the original probated accounts was absolutely neces-
sary, how could a good or a bad reason offered on Au-
gust tenth help the cause? However, taking the view
that on August tenth, appellants were to show some good
reason why the original probated accounts were not filed
on May the ninth, we infer that if appellants had of-
fered some good reason on August tenth, why they did
not file these accounts on May ninth, that the court would
have then considered the claim.

The chancellor continued the cases on May the ninth
until August the tenth for some reason, either for ap-
pellants to find their original probated claims, make
proof of those which had been lost, or for them to make
a showing why they were not produced on May ninth.
Evidently the chancellor did not take the view that the
continuance was for the purpose of having appellants
produce their original probated accounts, because when
they were produced he declined to receive or consider
them; evidently, he could not require them to make proof
of a lost document when they had had the original; we
therefore infer that the continuance, in the mind of the
court, was for appellants to reaffirm the fact that the
documents were lost on May ninth. They would have,
under such a ruling or contention, have been much better
off, had they been less diligent and not found their ac-
counts. We contend that it was not the duty of appel-
lants at the hearing on August tenth to prove that the
original claims were really lost or misplaced on May
ninth, when the continuance was granted, for if the loss
was questioned, and it was not, May ninth was the time
to do so.

Briefly, and in conclusion on this point of the appeal,
we urge that even in appellee's objections to the state-
ments filed by appellants had been duly made on May
ninth, the same should have been overruled, for the reg-
istry of appellant's claims was sufficient to confer au-
thority for payment, without proof, unless the claims

were contested. (See Hansell case.) And, we emphasize the fact that appellee's claims are not contested, but are admitted, and the only objection is that the original probated accounts were not filed on May ninth. For what was the original probated claim wanted? The registration of the claims was sufficient for the administratrix to pay, and appellants filed the claims in the insolvency proceedings and showed that the same had not been paid.

*Ernest E. Brown* and *A. H. Geisenberger,* for appellee.

In our judgment the only matter worthy of the consideration of this court is appellants' contention that the chancellor erred in disallowing their claims.

C. Holloman died on March 2, 1911, and in a few days thereafter his widow qualified as administratrix of his estate and gave the proper notice to creditors to have their claims probated, allowed and registered, and the estate having been adjudged insolvent more than a year after notice had been given creditors to probate their claims, they were notified to file probate claims with the clerk of Adams county chancery court on or before May 9, 1912, and that on that day the chancellor would take up for examination and allowance all claims, so filed. On the afternoon of May 9, 1912, when the chancellor in accordance with section 2117 took up for examination and allowance the claims filed with the clerk in pursuance of the notice so to do, he did not find on file the probated claim of any one of the three appellants. L. J. Keenedy, Esq., as counsel for appellants filed his affidavit on May 9, 1912, as attorney for all three appellants that their probated claims had been lost or misplaced, and for appellants, Levy & Gonsenheim and Keiffer Bros. Co., he filed statements as follows: "The estate of C. Holloman, Dr. to Levy & Gonsenheim, to probated claim two hundred and five dollars and ten cents," "The estate of C.

Holloman, deceased, Dr. to Keiffer Bros. To probated claim four hundred and twenty-six dollars and two cents," and for Wertheimer-Swarts Shoe Co. he filed an itemized account, but not the one which had been probated, allowed and registered by the clerk. To each of said statements was affixed a certificate of the clerk that on a certain day he had allowed and registered the claim of Wertheimer-Swarts Shoe Co. or Keiffer Brothers Co., or Levy & Gonsenheim, as the case might be, for a certain amount and "that said claim was duly itemized and proved against said estate in accordance with the statute."

Manifestly these statements of appellants, Keiffer Bros. Co. and Levy & Gosenheim that the estate was indebted to them "to probated account," and the unprobated and unregistered account of Wertheimer-Swarts Shoe Co. did not comply with the statute, nor give the court jurisdiction to allow anything on them, nor was the failure to file the probated claims remedied by said certificate of the clerk. Sec. 2117 of the Code requires the chancellor not the clerk to pass upon whether a "claim was duly itemized and proved," and in order for the chancellor to do this, it is necessary for him to examine the identical claim that was probated and registered.

In *McWhorter* v. *Donald*, 39 Miss. 779, the clerk had probated the claim as properly proved, yet the court held the probate was void and no voucher to administrator, because the affidavit, though stating the claim was "just and true" failed to state that "no part of the money stated to be due, nor any security or satisfaction for the same, has been received." In *Cheairs* v. *Cheairs*, 81 Miss. 662, the clerk had probated and registered the claim as proven according to the statute, but this court held the clerk had no jurisdiction to allow and register it and his action in so doing did not stop the running of statute of limitations, because the affidavit for probate did not contain the words "that it is not usurious."

Under section 2117 the chancellor alone can allow a claim in insolvency, and he is authorized to allow only such probated claims that are filed with the clerk by the day fixed in notice and that appear to be valid and to have been properly probated, allowed and registered by the clerk. Sec. 2117 of Code 1906 corresponds with section 2059 of Code of 1880 and if there could have existed any room for doubt as to whether the filing with the clerk of probated claim by date named was mandatory and jurisdictional, this doubt was put at rest by the construction of section 2059 of Code of 1880 by this court. In *Greener* v. *Neal,* 61 Miss. 206, CAMPBELL, C. J., delivering the opinion of the court said, "Under section 2059 of the Code of 1880, a claim against an insolvent estate, not filed with the clerk of the court as required, is not to be embraced in the list of claims allowed. The effect of the requirement to file the claim with the clerk was to restore the rule declared in *Hansell* v. *Forbes,* 33 Miss. 42. Registration is a sufficient presentation of a claim to the executor, administrator or collector, but when an estate is declared insolvent, and notice is published of the day for creditors to attend, their claims, although registered, must be filed with the clerk by the date named in the notice, so that the examination into the validity of each claim contemplated by the statute may be made."

Could language make it plainer that the identical claim probated must be filed with the clerk, so the chancellor may examine into its validity and determine whether it is a just claim and in addition whether it was proved up against the insolvent estate within the time and in the manner required by the statutes.

Realizing his clients had not complied with the law by filing on or before May 9, 1912, with the clerk their probated claims, L. J. Kennedy, Esq., counsel for appellants, filed the following motion, which he swore to before the clerk, to wit: "In re Estate of C. Holloman, deceased. Now comes Wertheimer-Swarts Shoe Company, Keiffer

Bros. and Levy & Gonsenheim, and ask for a hearing in the matter of objections to their respective accounts filed herein and probated and registered, and ask the court to grant thirty days in which they shall file proofs and evidence to show the justness and correctness of their respective accounts and show why the same should receive their *pro rata* in the insolvency proceedings filed herein. The original probated accounts having been lost or misplaced. Wertheimer-Swarts Shoe Co., Keiffer Brothers. Company, Levy & Gonsenheim by L. T. Kennedy, attorney. Sworn to before me on this the May 10, 1912. JOHN F. JENKINS, Chancery Clerk.''

It will be noted there were no affidavits or proofs filed by appellants that their probated accounts had been lost, stolen or destroyed without negligence on their part, nor any showing of any kind made for postponement of examination of their claims except above sworn motion of their attorney, who offered no reason why appellants did not file their own affidavits as to their probated claims having been lost or misplaced.

The chancellor in his decree of May 9, 1912, examined and allowed all claims that were allowed in insolvency proceedings against estate of C. Holloman, and in his decree of May 9, 1912, appears the following order ''that the further hearing upon claims of J. Pollock & Company for three hundred and sixty-three dollars and fifty-five cents and of Bee Bee Hair Company for twenty-four dollars and seventy-six cents and of Wertheimer-Swarts Shoe Company for four hundred and fifty-eight dollars and sixty cents, Keiffer Bros. & Company for four hundred and twenty-six dollars and two cents and Levy & Gonsenheim for two hundred and five dollars and ten cents be continued until 12 m. on the 15th day of July, 1912.'' On July 15th the chancellor further postponed the hearing on claims of appellants until August 10, 1912.

When notice has been given of the day when the chancellor will take up claims for examination and allow-

ance against an estate adjudged insolvent, the statutes contemplate only one ground for a postponement of the examination of the claims, and that is found in section 2119 of the Code, which provides for a postponement of examination of claims on file with the clerk, where there is a pending suit until determination of the suit or validity of claim sued on is determined by the chancery court. There was no suit pending against estate of C. Holloman on May 9, 1912, and in our opinion the chancellor in his decree of that date should have disallowed the claims of appellants, because they had not filed with the clerk their probated claims. There is no statute which authorized him to continue the hearing upon these claims of appellants since there was no suit pending on any one of these or any other claim.

The chancellor was of the opinion that appellants having failed to file their probated claims by the 9th of May, 1912, he had no jurisdiction to allow anything on these claims, unless appellants proved they were not negligent in failing to file their probated claims by reason of same having been destroyed, stolen or lost without carelessness on the part of appellants. To give appellants a chance to make such a showing, the chancellor continued the hearing on their claims to July 15th and later to August 10, 1912. When on August 10, 1912, more than three months after he on May 9, 1912, had granted them time to make a showing, the chancellor finally passed on appellants' claims, there was on file not a single deposition nor even an *ex parte* affidavit from any one of appellants showing their claims had been destroyed, stolen or lost without fault on their part. All they did was to file their probated claims, which they should and would have filed on or before May 9, 1912, had they not been guilty of inexcusable negligence. The chancellor on August 10, 1912, properly declined to consider their probated claims which appellants then had on file and offered to the court. In this decree of August 10, 1912, the chancellor gives his

reason for not considering the probated claims then offered him of appellants as follows, ''and it appearing to the court that all of these claimants failed to file with the clerk of this court their probated claims against said estate by May 9, 1912, the date named in the notice to creditors to file their claims with the clerk of this court in the insolvency proceeding and that said claimants have failed to offer any good reason why they failed to file their probated accounts with said clerk by May 9, A. D., 1912, although the hearing upon their claims was continued to this date for them so to do, it is thereupon ordered, adjudged and decreed by the court that the claims of said claimants be disallowed, to wit: Bee Bee Hair Company for twenty-four dollars and seventy-six cents, Wertheimer-Swartz Shoe Company for four hundred and fifty-eight dollars and sixty cents, Keiffer Bros. & Company for four hundred and twenty-six dollars and two cents and Levy & Gonsenheim for two hundred and five dollars and ten cents.''

If appellants had the right to have hearing on their claim postponed to make a showing why they had not filed their probated claims by May 9, 1912, and this we deny the chancellor had any authority to grant, they certainly failed to offer any excuse why they had not filed their claims by the date fixed, as required by the statute, and surely then nothing was left for the chancellor to do except disallow the claims. These claims were just as effectually barred by limitation by appellants failing to file them by May 9, 1912, or to offer proof showing good excuse for not filing them on or before that day, as if appellants had failed to have said claims probated, allowed and registered in the first instance by the clerk, within the twelve months allowed by law after notice to creditors to have their claims probated and registered. Any other construction would indefinitely postpone the distribution of assets of an insolvent estate and work an intolerable hardship upon those creditors, who were dili-

gent and complied with the plain letter of the law, by fil-
ing with the clerk by day named in the notice their pro-
bated claims for examination by the chancellor.

COOK, J., delivered the opinion of the court.

C. Holloman died intestate, and his wife was appointed
administratrix of his estate. Publication for creditors
was given in due form, and after the expiration of the
time for probating claims the court declared the estate
insolvent, and gave notice in the manner provided by
section 2117, Revised Code of 1906, for all creditors to
file their claims by March 9, 1912, at which time all claims
would be taken up for examination and adjudication.

The claims of appellants had been duly probated, but,
in response to the notice to file their claims for exam-
ination, appellants did not file the original probated
claims on March 9th, but filed copies of same, and at-
tached thereto the certificate of the clerk of the chancery
court that the claims had been filed, probated, and allowed
strictly in accordance with the statute, and the attorney
for appellants filed with the claims his affidavit that the
original probated claims had been lost or misplaced. The
court was requested to grant appellants thirty days in
which to file proofs and evidence of the justness and cor-
rectness of their accounts. The court ordered that a fur-
ther hearing upon the claims be continued until May 9th.
The original probated claims were found and filed at the
July term of the court.

It appears in the final decree that by agreement of all
parties, on May 9th, a further hearing upon these claims
was continued to August 10th, at which time the final
decree was entered disallowing appellant's claims, be-
cause no good reason had not been offered why the claims
had not been filed by May 9th. This ruling of the court
is one of the causes for this appeal.

Without deciding that the statute requires the filing of
the original probated claims, we think, assuming it does,

that the creditor should not be penalized, to the extent of forfeiting his claim, because it has been lost or mislaid. The further hearing upon the claims by order of court was continued to May 9th, and by agreement of all parties to August 10th. In the meantime, at the July term of the court, the original probated claims were filed. We think the court had the power to continue the hearing, or to extend the time for the presentation of claims; and this, in our opinion, was what was done. The proper probation of the claims and their justness is not denied, and they should have been allowed.

Appellants also appealed from the order allowing the claim of the Bank of Commerce. This claim was in the form of a note signed by Holloman & Co., and indorsed by deceased, by simply writing his name on the back. Appellants contend that the note was not properly probated. The affidavit attached to the note, when offered for probate, is as follows:

"State of Mississippi, Adams County.

"Personally appeared before me, John F. Jenkins, clerk of the chancery court of said county, L. R. Martin, cashier Bank of Commerce, who made oath that the annexed note for balance three thousand, three hundred and ninety-two dollars and sixty-six cents and interest, two hundred and fifty-one dollars and seventy-seven cents, to Dec. 13/11 made against Est. C. Holloman is just and correct and owing from the deceased, that it is not usurious, and that neither the affiant nor any other person has received payment in whole or in part thereof, except such as is credited thereof, if any, and indorsed by Ed Guess; that security has not been received therefor except as stated. Lewis R. Martin, Cashier Bank of Commerce.

"Sworn and subscribed before me this 13th day of December, 1911.

"JOHN F. JENKINS, Clerk. [Seal.]"

The point made in support of the exceptions to the probate of this note is that the indorsement is an irregu-

lar indorsement, and does not show on its face the character of the indorsement, and for this reason the affidavit should, by proper averment, show what relation C. Holloman sustained to the instrument offered for probate.

It is to be presumed that the chancellor ascertained the relation of the decedent to the note probated. The affidavit clearly states that the note was due and owing from the deceased; and this, we think, entitled the payer to probate the note against the estate, although the affidavit does not declare whether he was maker or indorser. The affidavit follows the statute, and this is sufficient.

The decree disallowing the claims of appellants is reversed, and is affirmed as to the claim of appellee, the Bank of Commerce. The cost of this appeal is taxed, one-half to appellants and one-half to the Bank of Commerce.

*Reversed and remanded.*